All right. Good morning and welcome. Good morning. Good morning. Calling the case of Devas Multimedia Private Ltd. et al. v. Antrix Corporation Ltd. Why don't we begin with the appellant. How much time would you like to reserve for rebuttal? Good morning, Your Honor. I'd like to reserve two minutes for rebuttal. Okay. Thank you. Please proceed. Good morning, Your Honors. Davis and the interveners asked this court to do something extraordinary, and that is to affirm enforcement of an arbitral award that has been set aside by the competent foreign court arising from a contract dispute that, as this court correctly found before, has no connection to the United States. There are many reasons this court shouldn't do that. I will begin with those addressed in the this court to respect the decisions of the Delhi High Court setting aside the award and the Indian Supreme Court decisions affirming that decision. Second, that exercising jurisdiction over a foreign corporation that is engaged in no conduct involving the United States is not consistent with due process under fold. Third, that subject matter jurisdiction is lacking because this Indian dispute is not capable of resolution by arbitration under the laws of the decided, including that the district court should have dismissed under the doctrine of forum nonconvenience, which it wrongly thought could not be applied to dismiss in favor of a foreign forum. Also, that the ICC arbitration did not conform to the party's agreement, which called for an ad hoc arbitration with specific procedures. And finally, that the district court wrongly allowed the interveners to register the judgment, even though they have no ownership interest. I'd like to begin with this set aside, since that is an insurmountable hurdle to affirming the decision below. And I think the easiest ground on which this court can dispose of this appeal. Actually, I'd like to start with something else. If I look at your motion to dismiss an opposition to petition to confirm foreign arbitral award, you have a statement that acknowledges the FSIA provides an exception to immunity for actions to enforce arbitral awards under the New York Convention. You only argue personal jurisdiction under the due process analysis. So why shouldn't we consider that a waiver? Sure, Your Honor, because subject matter jurisdiction cannot be waived as the Supreme Court found in Arbaugh versus YNH Corporation in 2006 and has said in many other decisions. And Antrix has consistently challenged jurisdiction, including by arguing that there was no waiver of immunity under the FSIA. Now, the focus of the jurisdictional and immunity arguments have shifted. But the FSIA provides the statutory basis for subject matter jurisdiction over Antrix if Antrix waives sovereign immunity. So I'm not persuaded by your first argument. Well, Your Honor, I would point the court to the fact that there is this matter capable of settlement by arbitration under the laws of the United States. And the Federal Arbitration Act is the law of the United States that defines what types of disputes are subject to arbitration. And it also defines commerce as limited to commerce in or among U.S. states or territories. It does not include purely foreign commerce. And that aligns with the core U.S. and international law principle that our domestic law generally only applies in the United States. It does not apply extraterritoriality. You know, Davis and Interveder's responses to this point. Can you explain, I wasn't sure from your supplemental brief, why it matters what the Federal Arbitration Act limits? Because the New York Convention says including, it doesn't say limited to agreements under the FAA. It's because the FSIA requires that the subject matter has to be capable of settlement by arbitration under the laws of the United States. So we have to have some affirmative United States law that provides that basis for resolution of the subject matter, of the dispute under the FAA. I don't know what else it could be. Nobody has pointed to anything else. And the FAA has this limitation to when it's talking about commercial disputes. What about the New York Convention? Well, Your Honor, the New York Convention, you know, this is a treaty. It doesn't trump U.S. domestic law, and it's incorporated by reference into it. And where it's incorporated by reference, this section is part two of the FAA. But the FAA has these threshold definitions. So when we're applying the New York Convention to say what's capable of resolution under that convention and under U.S. law, I think we have to look to those definitions. But, Your Honor, we recognize. But, you know, I'm looking at the FSIA-6, and it says, you know, an agreement or award governed by treaty enforced for the United States. So why doesn't that control here? Because the section suffices as that treaty. Because it still has that threshold requirement about the subject matter capable of settlement by arbitration under the laws of the United States. So again, we think there has to be some affirmative U.S. law that says this kind of dispute can be resolved by arbitration under the laws of the United States. And you think that when it says capable of settlement by arbitration under the laws of the United States, that means only the domestic laws of the United States and doesn't include treaties to which the United States is a party? I think it includes laws of the United States. So yes, there would have to be an act of Congress which could enforce a treaty. But again, the language in both the Panama Convention and the New York Convention carves out a lot of, you know, carves out the ability of courts to apply their own domestic laws. For example, that's why this court and others have held that forum non-convenience remains available even in cases brought under the New York Convention. The law of the forum still applies. And your honor, I did want to- I guess, you know, I still am a little bit confused because 6A.6 does say concerning a subject matter capable of settlement by arbitration under the laws of the United States, if, and then B says the agreement award is or may be governed by a treaty or other international agreement enforced for the United States calling for the recognition enforcement of arbitral awards. So I still don't see why the FSIA and the New York Convention here. So your honor, our view is that those are two separate requirements, the profitable language and the exceptions. But your honor, I did want to, you know, with the limited time here, turn the to some of the other very important grounds and that we, this court has to recognize that the decision, the arbitral awarded issue has been overturned. And so it doesn't exist to be enforced. And we don't think that this court can affirm an enforcement. Yes, your honor. Why do we have to recognize that? I mean, it's not part of, I mean, normally we review the record that was before the district court. That was the thing that happened after the district court ruled. So why is the appropriate mechanism for you to raise that argument? This appeal, when it would be reversing the district court for having not done something that it didn't know about. And why is it not more appropriate for that to be raised in a rule 60 B motion? Sure, your honor. So as the court may remember, we had moved for a limited remand on this issue when we think is still well within the court's authority to issue that limited remand. This court has authority under 28 U.S.C. 2106 to do that. We don't think that any particular procedural motion or mechanism has to be used. But there are a couple of things that make this court recognizing the fact of the set aside and its import particularly appropriate. To begin, Davis, the award holder itself has not actually argued that the set aside shouldn't be honored. They haven't argued that it's repugnant to fundamental notions of what is decent and just. And also, it was Davis that in the court below told the district court that, look, if this set aside proceeding goes forward and the decision is set aside, it's okay. Because at that point, they said, if the ultimate decision in India is that the award is rescinded, then money is returned. So we think Davis should be a stop from arguing that now that they can just avoid that set aside decision. And they're the ones that argued also that. I mean, I think you have a compelling argument that there should be some way of giving effect to the set aside. But what would be wrong with saying that you should do it in a 60B motion? Would you be prejudiced in some way if that's the mechanism that we say? Sure, Your Honor. So one concern we had, which is why we filed the motion for a limited remand, and we were following sort of the direction given by the Second Circuit in the Jacobson case, was that there have been cases finding that if you proceed with the motion under 60 or an indicative ruling motion under 62, you can lose your right. You can be found to have waived the other jurisdictional arguments. And we certainly don't want that to be the case here. So we did think that a motion for a limited remand was an appropriate mechanism. And this court always has the authority to say that, hey, this is a limited issue that should be addressed by the district court in the first instance. But we do think that there's nothing in the that that high bar for not recognizing this foreign judgment under basic principles of comity has been met. You know, Davis says nothing. Interveners try to throw mud at various Indian court decisions related to Davis, mostly focused on an ancillary liquidation proceeding. But these are exactly the sort of arguments that this court has recognized should not be employed to second guess a foreign judgment as this court recognized in the Corzo case. And I want to note, Your Honor, that in the Corzo case, although that wasn't about a set aside judgment, this court took up the issue of whether the Peruvian Supreme Court's decision overturning a prior judgment should be recognized by the court and given effect in the first instance that issue had not been addressed by the district court. So we think it's equally appropriate for the court to take the issue up here. But as I said, if the court wants to remand to the district court to address this issue first, it can. And Your Honor, we know that if this issue. Can I ask you a question? I wasn't clear. Are you arguing that you would be prejudiced because you would somehow be giving up your jurisdictional arguments if you were to file a 60 B motion? Your Honor, that is we are concerned that that argument would at least be raised based on some other decisions that are out there out of the Second Circuit in particular, the Pemex decision, for example, in Pemex. When the set aside decision came down, the Second Circuit immediately vacated the judgment below, remanded to address the set aside. But when then when the case went back up on appeal, arguments were raised that raised that jurisdictional issues had been waived and some of those were given credence. So we, you know, we do think we need to preserve our, you know, preserve our rights here as fully as we can. And so the limited remand is the appropriate mechanism. And Your Honor, I do want to briefly address the due process issues. A corporation has separate legal personhood under the law of the Supreme Court in this circuit. And that bars the court from exercising jurisdiction here because Antrix has not engaged in any conduct involving the United States. There is this presumption that a foreign government owned corporation is entitled to due process. And the district court did not do a veil-piercing analysis to overcome that presumption. It made very summary findings in a minute order that Antrix was controlled by India, but it did not find either complete day-to-day control of the corporation by India or that the corporation was misused for fraudulent purposes. But you didn't challenge the district court's decision. You know, I'm looking at two opinions here. You know, one saying respondent does not dispute that it is an agency or instrumentality of a foreign state defined under the FSIA as any entity which is a separate legal person, corporate or otherwise. You didn't dispute that. I'm looking at the minute order, which says the parties do not dispute the personal jurisdiction exists as a matter of statute, but Antrix maintains it is entitled to additional constitutional due process protections. So Your Honor, yes, those are separate questions. Whether under the FSIA, Antrix is a, you know, as a foreign government-owned corporation, we don't dispute that it's subject to the FSIA, but that does not mean that due process is disregarded. That does not mean that the corporate separateness is disregarded for due process purposes. Bankec itself, I think, recognizes that as does this court's decision and flat out and wholly see. And in fact, Your Honor, you did concede that Antrix is an agent or instrumentality of India, correct? Your Honor, we conceded only that it counts as such under the FSIA, but being an agent or instrumentality of India, I mean, just a government-owned corporation is not the test under Bankec. There has to be complete day-to-day control. That was not established here. The district court didn't address the separateness of Antrix's finances, that it was separately controlled, and that it doesn't have to seek Indian government approval for its decisions. And the arbitral tribunal, Your Honor, I think this is really notable, and this is at ERP, paragraph 224, the arbitral tribunal found that Antrix was a separate legal entity. So we don't think that interveners and DAEVA should be able to rely on the decision by the arbitral tribunal in other regards and ignore that it found that Antrix is separate from the Indian government under those traditional tests. But the district court found that Antrix was a wholly-owned corporation of the government of India and that it was effectively controlled by India, didn't it? Your Honor, it said it is controlled and that's it. But government-owned corporations, the fact that it's a government-owned corporation alone is not enough. There would be no need to apply a Bankec analysis. The precedents recognize that there has to be more than that, that the government has to so control the entity on a day-to-day basis that it is functionally just the government itself, and that those findings were not made here. And Your Honor, there was no conduct involved in the United States here by Antrix, and there is no U.S. interest in adjudicating this purely Indian dispute as this court rightly recognized before. And Your Honor, I know I'm almost out of my time here, and I do want to reserve the rest for rebuttal. But again, we want to note that DAEVA could have, as this court previously recognized, sought confirmation of the award in India and come to the United States to collect on assets in a particular jurisdiction invoking in-run jurisdiction. It did not. It has not met the requirements for due process and personal jurisdiction here. All right. You have like eight minutes left or eight seconds left, but I'll give you two minutes for rebuttal. Thank you, Your Honor. I appreciate that. Okay. And how do you plan to split your time? Just one of you go first for seven and a half minutes, and the other, are you splitting subject matter? Or how do you proceed? That's correct, Your Honor. I will be going first for seven and a half minutes, and I will be addressing the jurisdictional and threshold issues. And Mr. McGill will be discussing the effect of the Indian set-aside ruling and the confirmation merits. And who do you represent? Can you state your name, please? Yes. Christopher Tatunjan from Baker Botts, and I represent the Appali DeVos Multimedia Private. Okay. And you'll do the jurisdictional issues and what else? Sorry, my notes are incomplete here. Yes. The jurisdictional issue is subject matter and personal jurisdiction, and for nonconvenience, if that arises during your questions. Okay. And then Mr. McGill is handling the set-aside and what else? He will be doing the handling. He'll be handling the set-aside as well as the Article V confirmation issues. All right. Go ahead, please. Thank you. The question before this court is the same as it was in 2023. Did the district court properly confirm the arbitral award? The answer to that question is yes, and as Mr. McGill will explain, the Indian set-aside ruling has no effect on the resolution of that question. Subject matter jurisdiction is proper because Antrix waived an immunity defense, which creates jurisdiction under Section 1605A1. Personal jurisdiction is satisfied because Antrix is the alter ego of the foreign state of India, and like India, it has no due process rights. Form nonconvenience does not apply in an arbitral confirmation action, and as Mr. McGill will discuss, Antrix's Article V defenses are meritless. This court should affirm confirmation and also reverse the order, allowing the interveners to register the judgment. I'd like to turn first... You're asking us to hold that Antrix is not a person under the Fifth Amendment's due process clause, but why should we do that when the Supreme Court has declined to do so? And I know you cite South Carolina versus Katzenbach, but that was 1966, and in 1992, the Supreme Court said, well, let's assume without deciding that a foreign government is a person for purposes of the due process clause in the Republic of Argentina versus Weltover case. So 26 years later, they actually sort of went the other way and said, let's assume it. Yes, we believe holding that Antrix is not a person is the most direct and easiest route to resolving the personal jurisdiction issue. Since the Supreme Court's decision in Weltover, there has been a consensus that foreign states and their wholly controlled instrumentalities are not persons. That was something that two members of this panel agreed upon the last time this case was before this court, and the district court made a number of findings explaining how Antrix is under the plenary control of the state of India. The government's internal report about Antrix, which is at ER 212-226, discusses that in detail, and that is what the district court relied on for its alter ego finding. The report describes Antrix as the corporate front of the Department of Space, a virtual corporation housed within the Department of Space, and an integral part of the Department of Space, unlike a typical public sector undertaking. So we think that given that there is a consensus here post-Weltover that alter egos of a foreign state are not a person entitled to due process protections, and given the district court's factual findings that are correct and not clearly erroneous, that is the most direct route to dealing with the personal jurisdiction issue. Now, if the court wants to look at the Supreme Court's recent decision in full, that also provides ample ground for holding that personal jurisdiction here is satisfied. In that case, the Supreme Court asked if Congress had made a reasonable determination to subject the foreign defendants at issue to suit, and that's the case here. Just like the PSJ VTA in fold, the FSIA reasonably ties the assertion of personal jurisdiction over foreign defendants to conduct implicating the United States' interests and over which Congress has made weighty and sensitive decisions concerning foreign affairs and judgments that are within the prerogative of the political branches. What is the conduct affecting the United States here? So there are two key interests that are at play for the United States, furthering the U.S. interest in complying with treaty obligations under treaties like the New York Convention, as well as facilitating international commerce by encouraging the confirmation of arbitral awards in the United States. There is also the United States' interest in securing reciprocal treatment from foreign states. If we open up our courts to the confirmation of arbitral awards, then our citizens and businesses will be able to go to foreign states and confirm their awards elsewhere. So the Congress and the President, the political branches, made judgments concerning foreign policy and foreign affairs, and that is the sort of decision that deference and respect from the judiciary. In addition, the FSIA's provision... Those are the general policy interests of the United States, but if Verlinden requires some form of substantial contact with the United States by this arbitration agreement, I don't see how that's met. Your Honor, the court in Verlinden said that the original or a waiver or consent. And the arbitration exception builds off of that original pattern to the FSIA because the arbitration exception is built on principles of consent to personal jurisdiction. When a state agrees to arbitrate under terms that satisfy the Convention, it consents to personal jurisdiction in the signatory states where the New York Convention is applied. And so it's fully consistent with the pattern articulated in Verlinden. In addition, after the Supreme Court's decision in this case... I mean, there was an Indian and Mauritian entities. The events took place in India. It's an arbitration award issued by an Indian tribunal sitting in India applying Indian law. Yes. So the question under fold is whether Congress made a reasonable determination in the statute it enacted. And here, Congress's decision to subject foreign states that have entered into arbitral agreements to personal jurisdiction is an eminently reasonable one. Let's talk about the FSIA arbitration exception to sovereign immunity and not talk about Fifth Amendment due process. If there's a presumption that the FSIA applies only to conduct that has connection to the U.S., what is that here with all these foreign entities, foreign events, foreign law, foreign tribunal? Where is that here? So the first thing I'd like to point out is the District of Columbia just last month issued a decision where they rejected Antrix's reading of the arbitration exception and the subject matter proviso that Sigma Constructores v. Republic of Guatemala and the site for that is 2026 Westlaw 369602. And in that case, as we've explained in our briefing here, the subject matter proviso refers to categories of law that categories of disputes that U.S. law deems non-arbitrable. The Supreme Court in Mitsubishi Motors explained that the provision contemplated the provision from the New York Convention that the subject matter proviso is copied from, that the provision contemplates exceptions to arbitrability grounded in domestic law. And here we have no U.S. law deeming this dispute non-arbitrable. This is a bread and butter commercial dispute, breach of contract, and these are the types of disputes that are presumptively arbitrable. There is no federal legislation expressly declaring this dispute to be non-arbitrable. In addition, the D.C. Circuit's decision in the Belize Social Development case explains that so long as the relationship has a connection with commerce, whether or not that commerce has a nexus with the United States, the New York Convention governs the award and its confirmation. And so we believe that Antrix's subject matter proviso argument is meriless. If I may say just a quick word about the registration appeal. This court should affirm the confirmation. Your time is up and we asked you to focus on the supplemental briefing. Unless you want to hear about issues that were argued in 2023, I think your time is up. But let me see if my colleagues want to argue any 2023 issues. No, thank you very much. Thank you. Go ahead, please. Thank you, Judge Koh, and may it please the court. Three years ago, Judge Miller, you asked counsel for Antrix why a Rule 60b-5 motion was not the most appropriate way to address the set-aside decisions of the courts of India. Antrix's motion for limited remand, filed now almost four years ago, acknowledged Rule 60 was available to it, but in all the time since, it has conspicuously declined to seek that relief from the district court. Now, Antrix is here arguing that the Indian set-aside decisions must be honored, quote, as a matter of law. That contradicts Antrix's own argument. So let's talk about your position before the district court. I'm just quoting here from the transcript of October 14, 2020. This is Mr. Nelson. I'm just going to quote it. And it was said by the Ninth Circuit that this ground applies only when confirmation or enforcement of a foreign arbitration award would violate the forum states, and that's the United States' most basic notions of morality and justice. So it's not surprising, Your Honor, that public policy arguments in this setting almost always fail, as they did in the case I have just referred to. So this was talking about what would happen if the Indian court actually set aside the arbitration award. And this is further what Mr. Nelson said. If the ultimate result in India is that the award is affirmed, then no prejudice whatsoever is had. If the ultimate decision in India is that the award is somehow rescinded, then money is returned. So I'm concerned that you led the district court and our court to do all this work on the representation that you would honor, whatever the Indian courts did. And I would just note that you're the one that chose the Delhi High Court as your forum. That issue went all the way up to the Indian Supreme Court. The Indian Supreme Court agreed with you that the Delhi High Court was the proper forum for your dispute. And now that you've gotten all, as you said, years and years of work by the district court and this panel and the Supreme Court, and now I feel like it's a bit of a bait and switch. I got you to do all this work because I'm going to abide by the Indian court's ruling. And now you're here saying, well, now that I've gotten all this litigation, now I want to fight that. I find that problematic. Why don't you address that? I mean, if you had said to the district court, do all this work, but I'm going to fight tooth and nail if the Indian Supreme Court disagrees with me, what do you think they would have said or done at that point? And do they feel somewhat misled? Your Honor, I'm happy to address that. That statement was made by Mr. Nelson in October of 2020, which is before three months, about three months before Antrix initiated its highly unusual liquidation proceeding in the National Company of Law Tribunal in Bangalore. I don't think Mr. Nelson had possibly within his contemplation the idea that Antrix would put its award creditor, DeVos, into a liquidation proceeding that would within 24 hours. I don't understand how that's an answer to my question. Whether DeVos is going to honor the decision of the Indian courts, it was represented to the district court that you would, and now you're not. So that's really my question. I know you want to go to the liquidation proceeding, but I'm saying what is before us is a representation that you would honor that court's decision. And I'm not seeing that in your conduct. Judge Koh, I think what Mr. Nelson was undoubtedly contemplating was that normal due process of rights would be observed within the courts of India. He was not assuming what happened actually in India in the course of 2021 and 2022. But you won before the Indian Supreme Court on the issue of jurisdiction, whether it should be the High Court of Karnataka or the High Court of Delhi. The Indian Supreme Court agreed with DeVos, gave you your chosen forum for this dispute. Your Honor, now you're saying, okay, when we won, we were willing to say it's not a kangaroo court, but now that the Delhi High Court issued an 87-page opinion against us and the appellate panel of Delhi High Court issued 132-page opinion against us, now it's a kangaroo court that we're not getting our fair shake in. Your Honor, the Delhi High Court's set-aside decision relies extensively on the liquidation decision. It holds that the liquidation findings were raised judicata, so they are inextricably intertwined. Mr. Nelson, when he made that statement three months before the liquidation proceedings began, was envisioning the normal due process that historically has been afforded to litigants within the courts of India. I do not feel like he was misleading the district court. The district court did not view itself as having been misled when we returned to the district court for emergency relief after those liquidation proceedings began. So I'm looking at the Delhi High Court's opinion concluded that the arbitral tribunal incorrectly excluded relevant evidence, that the arbitral tribunal made contradictory findings, that the award contravened the fundamental public policy of India because the, quote, very seeds of the commercial relationship between Antrix and DeVos were a product of fraud perpetrated by DeVos, end quote. And then the appellate panel of the Delhi High Court emphasized the third conclusion, that the arbitration award contravened public policy because of DeVos' fraud. So it does seem like they had pretty extensive findings. Your Honor, all of those findings were based on the liquidation court, the liquidation court held them to be res judicatum and that we were basically prohibited from disputing them. That was the finding of the Delhi High Court. That is why the Dupay Court of Appeal found that the due process deficiencies in the liquidation ruling meant that the set-aside proceeding could not be recognized. And that's from our most recent 28-J letter. We're just saying that... But I read the Antrix brief and they say, well, the Hague proceeding is different because there's no treaty with India that the Netherlands has to enforce a foreign judgment. And that the Hague proceeding applied Dutch law to Indian liquidation proceedings, which would not be applicable here. Now, I don't know. I haven't looked into that, but at least that was the response that I read in their brief. Your Honor, we have no treaty with either. But India is a signatory, correct, to the New York Convention? To the New York Convention, but that doesn't deal with... So are you saying the United States and India don't have, they're not signatories to the New York Convention and just don't share a treaty? They are just the same as the Netherlands and India are, Your Honor. I think what my friend on the other side was referring to was a treaty providing for enforcement of judgments, which is not what the New York Convention covers. The Hague Court of Appeal, in paragraph 6.16... So they don't have the equivalent of the FSIA. That's the argument. No, it's that they don't have the equivalent of a bilateral treaty providing for reciprocal enforcement of money judgments. And neither does the U.S. and India. We have in this country the Uniform Money Judgment Recognition Act that is done on a state-by-state basis. The standards for that are more or less the same as the Hague Court of Appeal applied in paragraph 6.16 of its ruling. My time has expired. I'm happy to address any other questions. Yeah, I guess I have sort of maybe the flip side of the question I just asked Ms. Berman, which is if we were to say that all these issues should be raised in a 60-B motion, would you, and it goes back to the district court, and they file a 60-B motion. Is there anything that you would say to the district court in that context that you wouldn't be able to say to the district court if we were to do what Ms. Berman suggests and grant a limited remand? In other words, does whether this is a remand or a 60-B make any difference to how the district court would evaluate what to do? I think it might, Your Honor, but I don't know exactly what Antrix had in mind. Their motion for a limited remand requested a remand for a quote supplemental opinion addressing the Indian set-aside rulings, but now there's a judgment that has been entered. So I don't know what that supplemental opinion could do other than address a Rule 60-B-5 motion. Rule 60 does, however, incorporate two things, at least, that would not be considered perhaps otherwise, which is, one, the public interest in the finality of judgments and that the movement approaches the court with equity. The interest in finality of judgments is not an unimportant rationale here. It's reflected in Rule 60's requirement that motions be made within a reasonable time and that here, Antrix has waited 42 months and still has sought no relief in the district court. Well, I think maybe you've just given the answer to this question. You would take the position if we were to say that this should be brought in a Rule 60-B motion, you would take the position that the motion was untimely? Um, we perhaps would take the position, Your Honor, that Antrix has forfeited its right to seek Rule 60-B relief by waiting so long. Yes, I think that argument is available to us and I don't want to concede it away as we sit here right now, but the motion hasn't been filed yet. We haven't, uh, you know, it's hard to know what we would say in response to it, but I can say for sure that the Rule 60 proceedings would contemplate would be exactly the type of factual development that Antrix itself contemplated in its motion for limited remand. The last oral argument before this court, Antrix said that the supplemental opinion was appropriate to allow the district court to, quote, amplify the record regarding the effect of the set-aside. That is what we believe needs to happen. We believe that there does need to be a development of a factual record about what actually took place in India and that the Rule 60-B procedure is the appropriate way to do that. Courts grant relief based on motions and that's the appropriate motion given the procedural posture of the case. Thank you. If there are no further questions, thank you, Your Honor. We submit that the judgment should be approved. Thank you. You have two minutes. Thank you, Your Honor. Your Honor, there is nothing magic about a Rule 60 motion and this court recognized in the Ameline case in 2005 that it has ample authority, just under its authority under 2106, to ask to direct the limited remand to address a discrete issue. So that's what we ask this court to do. Now, Your Honor, there are unique reasons why we think this court can and should just address the set aside in the first instance. It's because we're addressing that issue here on appeal for the first time because of Davis' and the intervener's conduct, because they rushed the district court to judgment despite the pending set-aside proceedings, resulting in a judgment that was then overturned by the highest court of India. It's because of that specific sequence of events that we're here addressing it before the Court of Appeals. So we don't think that should be held against us, most certainly. I also want to turn briefly back to the jurisdictional issues. I think Your Honor, Judge Koh is very right to say that this court should not be rushing to find that states are not entitled to due process when the Supreme Court hasn't and this court hasn't. In the earliest precedents, foreign sovereigns were referred to as persons, and we've cataloged that in our brief. We don't think the court should be jumping to conclude otherwise. Also, under the intervener's theory of how this analysis should work, every government-owned corporation would not be entitled to its separate legal status. They basically say because it is a government-owned corporation that's acting on behalf of the process. Let me ask you a quick question. If it was a limited remand just for the issue of determining whether to follow the set-aside or not, there would be fact-finding and development of factual record. Is that correct or not? I think our position would be that the most appropriate is to submit the decisions of the Indian courts to the district court. I don't think there should be extensive discovery. There usually isn't. It's usually a paper review, but I think that is what the district court would look at. Those things are all before the court here as well. Nothing that interveners have said comes close to that high standard of judgments that are repugnant to what is thought as decent and just. We're nowhere near that standard here. Indian courts are well-functioning. This court routinely defers to them, and Davis promised it would abide by the decision of the Indian courts. What are the differences between a limited remand and a 60B motion? I apologize if I'm just repeating Judge Miller's question. I don't think there actually is any difference necessarily in what the district court would do. I understand interveners to be arguing that they would try to use the Rule 60 mechanism to add additional hurdles to recognition of the set-aside, for example, based on the fact that time has elapsed since the set-aside. But as I was saying, that is because of their actions. We're here addressing the issue now, and we move for limited remand in this court because of their particular actions leading to a decision from the district court before the set-aside was decided. So I don't think there's anything different that the court would be doing, and I don't think this court needs any magic words or emotion for it to exercise its authority under 2106 to ask for a limited remand if it thinks that is appropriate. And then leave to the district court whether it needs any discovery to decide that issue? Your Honor, our position would be that discovery is not appropriate. I think that could be argued before the district court, but we think that the court should direct the district court to examine the decisions and see, noting that the presumption is that you honor the floor in judgment. As this court said in Corso, nothing's more repugnant to principles of comity than to enforce approving judgment when the highest court approves declared it null and void. And like here, there were allegations made that there were irregularities in that Supreme Court decision, and our court said we're not going to sit in judgment of that. So we would ask the court to at least instruct the district court that it should be reviewing with that deference to the foreign court. One very final note, Your Honor, my friend on the other side did bring up the forum nonconvenience issue, and I don't want to rehash things discussed in two years prior, but there is an error in the district court's decision there. The district court thought that forum nonconvenience was not available at all here, but that is contrary to this court's law. This court recognized in the Chuazon case that you can dismiss in favor of a foreign forum, and the Second Circuit has multiple times held in Montgasquie and other cases that forum nonconvenience is an available defense. Your time has expired, and this panel did issue a focus order to ask the parties to please focus on the issues in the supplemental briefing and not issues that were already argued in 2023. So unless my colleagues have any more questions, I'm going to thank you and ask you to conclude. Any further questions? Okay, no further questions. I'll give you one sentence to wrap up. Sure, Your Honor. We think this court should again reject the Davis and Intervenors attempt to bring their purely foreign dispute into the U.S. courts. No court has ever held that a foreign arbitral award arising out of a contract with no connection to the U.S. belongs in U.S. courts, and our courts have consistently recognized that we have to honor foreign set-aside judgments. Thank you. Okay, thank you all for your very helpful arguments, and we're adjourned. Thank you. This court stands adjourned.
judges: MILLER, KOH, Molloy